IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RHONDA L. FRACTION a/k/a LYNNE FRACTION, *et al.*, Plaintiffs, v. JACKLILY, LLC*., et al.,* Defendants. | : : : : : : : : : : : Civil No. 5:20-cv-05997-JMG |

## MEMORANDUM OPINION

**GALLAGHER, J.**                                                                                     September 2, 2021

Presently before the Court is an appeal from the Bankruptcy Court's decision that the modifications on the original mortgage did not cause it to lose priority over the second mortgage held by Jacklily, LLC ("Jacklily"). Jacklily now argues that the Bankruptcy Court legally erred in that finding. For the reasons that follow, the Court disagrees with Jacklily, and the Bankruptcy Court's decision will be affirmed.

**I.     BACKGROUND**

The present appeal stems from an adversary proceeding before the Bankruptcy Court.[1] *See In re Fraction*, 622 B.R. 642, 647 (Bankr. E.D. Pa. 2020). Rhonda and Steven Fraction (collectively, the "Fractions") purchased their primary residence in November 2006. *See id.* At that time, they had signed a promissory note with JP Morgan Chase for a $346,290.00 loan to be repaid at a 5.875% annual interest rate over thirty years. *Id.* The note was secured by a mortgage on their residence, and the mortgage was recorded in July 2007. *Id.*

---

[1] The facts of this case are not in dispute, and therefore the following summary is largely derived from underlying Bankruptcy Court opinion, *In re Fraction*, 622 F.R. 642, 644–48 (Bankr. E.D. Pa. 2020).

In June 2012, the Fractions made their first modification to the note underlying their mortgage. *Id.* at 648. Specifically, they "extend[ed] the maturity date to June 2052, capitaliz[ed] the unpaid interest and escrow payments on the loan into a new principal balance of $381,768.14, lower[ed] the interest due on the note from 5.875% to 5.000%, and lower[ed] the monthly payments of principal and interest from $2,048.44 to $1,840.87." *Id.* Then, in April 2016, the Fractions executed a second mortgage on their residence to Jacklily to secure "an additional promissory note in the original principal sum of $143,823.48, plus interest." *Id.* This second mortgage was recorded in May 2016. *Id.*

In March 2017, the first mortgage was assigned to Specialized Loan Servicing, LLC ("SLS") and thereafter recorded. *Id.* A few months later, in June 2017, a second modification of the note underlying the original mortgage was made. *Id.* The modification included changing the term of the mortgage, adding "unpaid amounts of accrued interest, escrow advances, and short advances" to the principal balance, and lowering the interest rate. *Id.* At the time the underlying bankruptcy case was initiated, the unpaid balance of the original mortgage was $403,132.48, and the fair market value of the house was $400,000. *Id.*

## II. BANKRUPTCY COURT'S DECISION

Understanding the Bankruptcy Court's reasoning is helpful when assessing the contentions made by the parties on the appeal. The Court began by reiterating the legal standards for mortgage priority in Pennsylvania. *Fraction*, 622 B.R. at 648–49. "Under Pennsylvania law, liens against real property generally have priority over each other based on whichever lien was recorded first." *Id.* at 648 (citing to 42 PA. CONS. STAT. § 8141). The underlying purpose of such a recording statute is to "give notice to potential creditors of any extant encumbrances on the property to serve as a collateral." *Id.* (citing to *In re Trosky*, 371 B.R. 701 (Bankr. M.D. Pa.

2

2006)). The Bankruptcy Court noted that "[a] mortgage's priority is not limited to the principal balance of the loan that the mortgage secures." *Id.* Indeed, the mortgage may secure "certain advances made by the mortgagee for the protection of the mortgaged premises and the mortgagee's secured position." *Id.* at 648–49. These advances may include payments for "taxes, assessments, maintenance charges, insurance premiums, and costs incurred for the protection of mortgaged premises or by reason of the default of the mortgagor." *Id.* at 649. If the mortgage states that it will secure these advances, then the mortgage "will be a lien on the mortgaged premises from the time of recording for the full amount of such unpaid advances, plus interest, regardless of when the advances are made." *Id.* The Bankruptcy Court included "[u]npaid interest that has accrued on a loan" as similarly "secured with the same priority as the loan principal and the advances referenced in [42 PA. CONS. STAT. § 8144.]" *Id.* Although it could not find any reported decision to support this proposition, the Bankruptcy Court assumed this was because "the principle is so basic and obvious that no court has found it necessary to discuss."[2] *Id.*

      Turning to the specific contentions in the case, the Bankruptcy Court noted that Jacklily cited to cases from other states and the RESTATEMENT (THIRD) OF PROPERTY § 7.3 to support the "proposition that a modification of a senior mortgage or the obligation it secures will cause the senior mortgage to lose priority to the extent that the modification prejudices junior mortgages." Jacklily also cited to *Ter-Hoven v. Kerns*, 2 Pa. 96 (1845), as establishing "the binding principle that a junior mortgage would gain priority over a senior mortgage to the extent of any non-

---

[2] "Undoubtedly, when a loan accrues interest pursuant to a note, any unpaid, accrued interest is part of the obligor's debt under the note and as such is secured by a mortgage that secures repayment of the note. Indeed, it would make no sense for a statutory priority scheme to protect the priority of various advances commonly authorized by mortgages but not protect the priority of unpaid, accrued interest on the loan itself." *Id.*

obligatory advances made by the senior mortgagee to the mortgagor and added to the senior loan after the junior mortgagee had recorded its interest." *Id.*

Rather than definitively resolve whether § 7.3 of the Restatement applies in Pennsylvania or whether *Ter-Hoven* controls this case, the Bankruptcy Court found that even assuming *arguendo* that these principles applied, the original mortgage did not lose priority to the mortgage held by Jacklily: the modifications to the original mortgage only reconfigured the secured debt and did not constitute a new advance of funds under *Ter-Hoven*, and these modifications did not prejudice Jacklily under § 7.3 of the Restatement. *Id.* at 650–52. Following this conclusion, Jacklily's mortgage was then found to be "wholly unsecured," considering the residence was valued at $400,000 and SLS had a secured claim of $403,132.48. *Id.* Jacklily has appealed.

### III. STANDARD OF REVIEW

District courts "review the Bankruptcy Court's legal conclusions *de novo* and its factual findings for clear error." *In re Orexigen Therapeutics, Inc.*, 990 F.3d 748, 752 n.7 (3d Cir. 2021) (quoting *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 209 (3d Cir. 2011) (en banc)).

### IV. DISCUSSION

The crux of Jacklily's challenge to the Bankruptcy Court's decision is that, in Jacklily's opinion, the Court disregarded the binding precedent set forth in *Ter-Hoven v. Kerns*, 2 Pa. 96 (1845), that required the second mortgage to take priority over the original mortgage to the extent the modifications increased the principal loan amount, thereby creating new debt that was never recorded. ECF No. 6, at 6–13. Jacklily also takes issue with the Bankruptcy Court's conclusion that it was not prejudiced by the unrecorded modifications to the original mortgage under § 7.3 of the Restatement. *Id.* at 13–15. In response, the Fractions argue that the Bankruptcy

Court correctly found that the modifications to the original mortgage simply capitalized amounts that were already secured by the mortgage and did not create new debt such that the original mortgage would lose priority or the modification would have to be recorded.[3] *See* ECF No. 9, at 3–6. Moreover, the Fractions agreed with the Bankruptcy Court's conclusion that Jacklily was not prejudiced by the modifications. *Id.* at 6. Having reviewed the parties' arguments and the decision below, the Court agrees with the Bankruptcy Court's determinations on both fronts.

First, even when assuming, without deciding, that *Ter-Hoven* controls, the modifications made to the original mortgage did not create new debt causing Jacklily's mortgage to take priority. As the Bankruptcy Court explained, the modifications merely restructured debt that was *already* owed under the notes. *Fraction*, 622 B.R. at 650–51. Namely, the unpaid interest that had accrued and the unpaid escrow advances were recapitalized into the principal balance. *Id.* This fact, as recognized by the Bankruptcy Court, distinguishes the modifications in this case from the "future advances" discussed in *Ter-Hoven* and that would impact the priority of the mortgages. *Id.* "In speaking of future advances that might impact the senior lienholder's priority, the *Ter-Hoven* court referred [to] the 'creat[ion of] a liability **for the first time**." *Id.* at 651 (second alteration in original) (emphasis in original) (quoting *Ter-Hoven*, 2 Pa. at 99). Therefore, because the increase in the principal balance was simply owed debt that was recapitalized, the Bankruptcy Court did not err in concluding that it was not a "future advance" such that the second mortgage would take priority.

---

[3] SLS similarly argued that the modifications in this case only capitalized amounts that were already owed to SLS under the original mortgage. ECF No. 8, at 3. In addition, SLS urged this Court to decline to apply the doctrine of equitable subordinations for the reasons outlined in *Hamilton v. Pa. Housing Finance Agency*, 614 B.R. 48 (E.D. Pa. 2020) (Savage, J.). *Id.* at 3–4. In *Hamilton*, the Court declined to adopt either § 7.3 of the Restatement or an equitable subordination doctrine as a new rule in Pennsylvania. 614 B.R. at 57–58. Noting that a similar issue is presented in this case, the Bankruptcy Court here chose to instead assume, without deciding, that either § 7.3 or *Ter-Hoven* applied, as Jacklily still would not prevail. *Fraction*, 622 B.R. at 650.

Second, even if § 7.3 of the Restatement applies in Pennsylvania (which both the Bankruptcy Court and this Court decline to decide), the modifications to the original mortgage did not prejudice Jacklily such that equitable subordination would be warranted. Although the principal balance was increased in both modifications, the interest rate and monthly payments were lowered. *Id.* The net result was that the amount of the Fractions' indebtedness was reduced over time. *Id.* And if they defaulted, the first modification "would have placed any junior lienholders in a *superior* position compared to the position they would have had under the terms of the original Note." *Id.* In addition, the Restatement suggests that where, such as here, a modification extends the maturity date of the original note, the junior lienholders are benefitted because the likelihood of foreclosure on the senior mortgage is reduced. *Id.* Accordingly, the Bankruptcy Court correctly determined that assuming *arguendo* that the doctrine of equitable subordination applied in Pennsylvania, it would not justify giving Jacklily's mortgage priority over the modifications to the original mortgage.

## V.     CONCLUSION

For the foregoing reasons, the Bankruptcy Court's decision will be affirmed. An accompanying order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge